**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | | |
|---|---|---|
| **SALLIE WALKER** | § | **CIVIL ACTION No.** |
| **Plaintiff,** | § | |
| | § | |
| **versus** | § | |
| | § | |
| | § | |
| | § | |
| **JACKSON PARISH** | § | |
| **CORRECTIONAL CENTER,** | § | |
| **Defendant** | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**NOW INTO COURT**, through undersigned counsel, comes Sallie Walker who respectfully submits this Complaint and avers the following:

### I.    PARTIES

1. Plaintiff Sallie Walker (sometimes collectively referred to as "Plaintiff or Ms. Walker") is a person of the full age of majority, domiciled in the parish of Bienville, State of Louisiana.

2. Defendant, Jackson Parish Correctional Center (hereinafter referred to as "JPCC") is authorized to do business in the State of Louisiana.

### II.    JURISDICTION

3. This Court has jurisdiction under Title VII of the Civil Rights Act of 1964 and 1991 and Louisiana Employment Discrimination Law.  See 42 U.S.C. § 200e-2(a); La. Rev. Stat. § 23:301, et. seq.

### III.    VENUE

4. Venue is proper under 28 U.S.C.A. §1391(b)(1) because a civil action can be brought in a judicial district in which any defendant resides if all defendants are

residents of the state in which the district is located.  Defendant, Jackson Parish Correctional Center, is a domestic limited liability corporation authorized to do and currently doing business throughout the State of Louisiana and in the Western District of Louisiana.

## IV.    FACTUAL BACKGROUND

6. Sallie Walker, a now 62-year-old black woman, begin her employment at JPCC on May 30, 2008 as a correctional officer. Ms. Walker's work ethic led to her promotion to deputy throughout her tenure. However, the work environment became increasingly hostile due to her being supervised by an all-white team.

7. During Ms. Walker's first five to ten years with JCPP she was denied several promotions. Not due to lack of qualification but due to the color of her skin.

8. Ms. Walker was denied a promotion within the booking department, despite her experience of being the only member of her evening shift team to consistently step in and work for the department. Despite her denial of promotion, Ms. Walker consistently demonstrated superior performance.

9. When a permanent position within the booking department became available, Ms. Walker was denied the position. However, she was asked to help train the new white woman who did not have the required qualification but was given the position. The only difference between the less qualified white woman who received the promotion and Ms. Walker is the color of their skin.

10. Ms. Walker continued to work for the JCPP enduring passive aggressive behaviors from the white staff.

11. On March 16, 2022, Ms. Walker was working in Control Room 2. At 3:10 PM Sergeant Robert Lowring, ("Lowring") entered the room. Ms. Walker began to feel uneasy due to Lowring widely known history of disrespectful behavior towards black female officers.

12. At 3:15pm, Lowring looked at his watch and told Ms. Walker "Time to kick someone's ass!"

13. Lowring then retracted his left hand and punched Ms. Walker in her right shoulder.

14. Ms. Walker felt immediate pain to shoot through her arm. Ms. Walker told Lowring that she was in excruciating pain and requested that he leave the control room immediately.

15. Ms. Walker then notified Sergeants April Dillion, ("Dillion") and Deanna Harris, ("Harris") of her assault. However, Dillion and Harris took no adverse actions to ensure that Ms. Walker was safe from her attacker Lowring.

16. Dillion and Lieutenant Roy Jordan, ("Jordan") joined Ms. Walker in the control room. When Lowring returned Dillion informed him that Ms. Walker notified them of his attack against her.

17. Lowring became upset and began shaking Ms. Walkers chair.

18. Ms. Walker, while crying plead with Lowring to stop. Lowring refused and assaulted Ms. Walker again by punching her in her left shoulder.

19. Jordan and Dillion were still in the control room at the time of the assault and did not intervene or protect Ms. Walker instead they laughed.

20. The assault continues when Lowring leans into Ms. Walker and places his hand in her face as she is crying and states "I ought a slap you!" before leaving the room.

21. Ms. Walker contacts Harris to inform her of the most continuing harassment and assault against her by Lowring.

22. Ms. Walker contacted Warden Tim Ducote, ("Ducote") who told Ms. Walker to take photos and to formally report Lowring and his actions.

23. On March 17, 2022 Ms. Walker reported for her shift and inquired with Major Bryan K. Bellelo ("Bellelo") regarding the reporting of her assault. Bellelo told Ms. Walker that he had intentions of speaking with Lowring and advising him to stay away from Ms. Walker.

24. Following Bellelo's response, Ms. Walker no longer felt that she could perform the duties of her job in a safe work environment.

25.  Ms. Walker requested the booking clerk to contact the local police.

26. Lowring was standing on the other side of the booking desk and chuckled and told Ms. Walker "Nothing would be done to me".

27.  Ms. Walker believed that no action would be taken with the friendship Lowring had with Bellelo and Ducote.

28. On March 18, 2022, Ducote reached out to Ms. Walker while she was at home and requested she report to his office immediately. Ms. Walker arrived later in the morning to review the camera footage of Ms. Walker being attacked by Lowring.

29. Ducote asked what recourse would satisfy Ms. Walker to which she responded, "I would like Lowring terminated and charged."

30. Lowring was subsequently terminated, however, when Ms. Walker asked about criminal charges for her attacker, Ducote stated, " I will not be pursuing charges" and that Ms. Walker can do so independently.

31. On March 23, 2022, Ms. Walker reported her assault to the Jonesboro Police department.

32. Chief of Police James Harris personally assigned Ms. Walker's case to investigation.

33. Ms. Walker was not notified nor participated in any investigative proceedings.

34. In the following months, Ms. Walker started to experience isolation from colleagues who were friends and relatives of Lowring, creating a hostile environment.

35. Colleagues would make comments in passing stating "she is faking, she is not really hurt."

36. In addition to the emotional stress of the aggressive and hostile work environment Ms. Walker was experiencing excruciating pain in her shoulder.

37. On November 3, 2022, Ms. Walker was diagnosed with Frozen Sholder Syndrome and subsequently placed on Family Medical Leave.

38. On November 11, 2022, Lowring was arrested and charged with the simple battery of Ms. Walker.

39. In early February while on leave recovering from both the physical and emotional abuse Ms. Walker experienced at the hands of her supervisors, she received notice that her FMLA leave had ended and that she was required to return to work immediately. However, Ms. Walker consulted her medical team, and she was not cleared to return to work.

40. On February 13, 2023, Lowring pleaded guilty to the simple battery of Ms. Walker.

41. On February 22, 2023, Ms. Walker was terminated from her position as a deputy with the Jackson Parish Correctional Center.

### V.     Count 1 – Race Discrimination

30. Ms. Walker incorporates by reference each and every paragraph of the facts and allegations stated in this Original Complaint as if fully pleaded at length herein.

31. Ms. Walker was an employee within the meaning of Title VII and belonged to a protected class under the statute.

32. Ms. Walker is a member of a protected group as a Black female.

33. Ms. Walker has significant experience and was qualified for the position for which she was employed.

34. Ms. Walker was qualified for a position in the booking department but was denied the opportunity. Instead, the position was given to an unqualified white woman, whom Ms. Walker was later asked to train.

35. Additionally, Ms. Walker suffered numerous adverse employment actions by their various supervisors, by being assaulted and humiliated for being assaulted

36. After the assault, her white supervisors did not promptly report the incident through the proper channels.

37. Ms. Walkers race was the clear distinguishing factor between her treatment and that of her colleagues.

38. The actions, or the lack thereof, by Jackson Parish Correctional Center, including the denial of promotion, subsequent termination, harassment, assault, and failure to conduct a timely investigation were driven by discriminatory intent.

### VII.     Count 2 – Retaliation

36. Ms. Walker  incorporate by reference each and every paragraph of the facts and allegations stated in this Original Complaint as if fully pleaded at length herein.

37. After attacking Ms. Walker, Lowring was informed by Dillion of Ms. Walker's intent to report the assault, which prompted him to return and assault her again.

38. Ms. Walker, engaged in the protected activity of reporting her assault to multiple supervisors.

39. Following Ms. Walker's attempts to report the assault to her supervisor, he watched and laugh as Ms. Walker was assaulted again.

40. However, Ms. Walker faced adverse actions from Jackson Parish Correctional Center employees who isolated her by ignoring her conversations and interactions.

41. There is a direct connection between Ms. Walker's participation in these protected activities. "But for" her request to report her supervisor for the attack, and in alignment with the company practice, as a Black employee, she would not have been subject to a hostile , unsafe work environment,  and unlawfully terminated for reporting the assault and for not returning to work due to not being cleared by her medical team.

## VIII.    Count 3 – Hostile Work Environment

53. On March 17, 2022, Ms. Walker was physically assaulted by Sergeant Lowring, who was known for his disrespectful behavior toward Black female deputies.

54. After the assault, Dillion reported Ms. Walker's intention to report Lowring, which led to another assault by him.

55. Ms. Walker, in tears from the assault, was mocked by Dillion and Jordan, who stood in the corner of the room laughing at her and her attack.

56. Ms. Walker was left unsupported by Ducote, who was friends with her attacker and refused to press formal charges against Lowring.

57. Additionally, following the reporting Ms. Walker began to be isolated by colleagues due to her reporting her assault .

58. The actions of Ms. Walker's supervisors at Jackson Parish Correctional Center created an unsafe and hostile work environment.

### IX.    Count 3 – FMLA Retaliation

59. Ms. Walker incorporates by reference each and every paragraph of the facts and allegations stated in this Original Complaint as if fully pleaded at length herein.

60. In addition to requiring employers to accommodate employees requesting covered family or medical leaves, the Federal Family Medical Leave Act (FMLA) prohibits retaliating against an employee for exercising FMLA rights.

61. Specifically, Ms. Walker properly requested FMLA leave via certification from her medical doctor.

62. In early February 2023, she was instructed to return to work, despite not having been cleared by her medical team.

63. On February 22, 2023, Ms. Walker was terminated for failure to return to work, even though her medical team had not authorized her to do so.

64. Jackson Parish Correctional Centers failure to protect Ms. Walker from harassment and retaliation, coupled with the racial discrimination reflected in its inadequate investigation and responses, subjected Ms. Walker to ongoing emotional distress and wrongful retaliation. This treatment was a direct violation of her rights under FMAL and Title VII of the Civil Rights Act.

## X.    PRAYER FOR RELIEF

As a result of Jackson Parish Correctional Centers racially discriminatory actions, adverse retaliatory treatment and hostile work environment, Ms. Walker is entitled to recover the following damages.

    A.  Back Pay, including wages and salary, overtime, and benefits;
    B.  Back Pay and Front Pay;
    C.  Punitive Damages;
    D.  Mental anguish and emotional distress;
    E.  Medical expenses past and future;
    F.  Pre-Judgment and Post Judgment Interests;
    G.  Reasonable attorney's fees;
    H.  Court costs; and
    I.  All other relief this court deems appropriate.

## XI. JURY DEMAND

Ms. Walker  requests a trial by jury.


Respectfully submitted,


**DANIEL, WILLIAMS & ASSOCIATES PLLC**

By:    */s/ Helen Daniel*
        Helen M. Daniel #31689
        Kathryn Williams *(pro hac vice pending)*
        2201 Hermann Drive
        Houston, Tx 77004
        Telephone: 713-229-9997
        Facsimile: 281-501-6777
        h.daniel@dainelwilliamslaw.com
        k.williams@danielwilliamslaw.com
        **COUNSEL FOR PLAINTIFF**