UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

SALLIE WALKER                         CASE NO.  3:25-CV-00339

VERSUS                                JUDGE TERRY A. DOUGHTY

JACKSON PARISH CORRECTIONAL           MAG. JUDGE KAYLA D.
CENTER                                MCCLUSKY

MEMORANDUM RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 23] filed by Defendant, Jackson Parish Correctional Center ("JPCC"). Plaintiff, Sallie Walker ("Walker"), opposes the Motion [Doc. No. 28]. JPCC filed a reply [Doc. No. 29], and Walker filed a Sur-reply [Doc. No. 32].

After carefully considering parties' filings and applicable law, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.     Background

This is an employment discrimination case. JPCC hired Walker on May 30, 2008, as a deputy and corrections/detention officer.[1] Walker worked for JPCC for about fourteen and a half years before her discharge.[2] On March 16, 2022, Walker's supervisor, Sergeant Lowring ("Lowring"), struck Walker in both arms during work hours.[3] Walker reported the assault to another supervisor, Lieutenant Jordan ("Jordan"), the same day.[4] JPCC then conducted its own internal investigation and

---

[1] [Doc. No. 23-2, p. 6].
[2] [Doc. No. 23-1, p. 5].
[3] [Doc. No. 23-2, pp. 66, 69]
[4] [Id. at p. 66].

Page **1** of **24**

confirmed Lowring struck Walker and twice shook her chair while she sat on it.[5] The assault injured Walker, resulting in "adhesive capsulitis of [her] right shoulder."[6] Upon completing its investigation, JPCC fired Lowring on March 23 2022.[7] On February 13, 2023, Lowring pled guilty to simple battery for assaulting Walker and received two years of probation.[8]

Following the assault, Walker's physician placed her on medical leave under the Family Medical and Leave Act ("FMLA") due to her shoulder injury.[9] Walker claims she began FMLA leave on November 3, 2022.[10] Yet the record reflects that Walker's FMLA leave started on November 16, 2022.[11] Walker continued treating her injury during her FMLA leave and did not physically return to work except when she brought excuses from her treating physician.[12] On December 7, 2022, Walker brought in an excuse that excused her from work for eight more weeks, through February 1, 2023.[13] A month later, on January 17, 2023, Walker brought in another excuse that sought to excuse her from work for six more weeks, through February 28, 2023.[14] It is unclear from the record whether JPCC accepted either excuse as an FMLA extension. According to JPCC, Walker's FMLA leave exhausted on or about January 31, 2023.[15]

---

[5] [Doc. No. 23-2, p. 69].
[6] [Doc. No. 23-2, p. 5].
[7] [Doc. No. 23-2, pp. 67, 69].
[8] [Doc. No. 23-2, p. 28]; [Doc. No. 28 p. 10]. Neither party disputes that the assault occurred.
[9] [Doc. No. 23-2, p. 27].
[10] [Doc. No. 28, p. 11].
[11] [Doc. No. 23-2, pp. 33, 36].
[12] [Id. at pp. 33, 38]; [Doc. No. 25-8, p. 1].
[13] [Doc. No. 28, p. 11]; [Doc. No. 25-8, p. 1].
[14] [Doc. No. 28, p. 4]; [Doc. No. 23-2, p. 38].
[15] [Doc. No. 23-2, p. 33].

On February 6, 2023, JPCC sent Walker a letter, informing her that she exhausted all of her FMLA leave.[16] They also advised her that they could consider giving her further extended leave under the Americans with Disabilities Act reasonable accommodations if she provided additional medical information.[17] JPCC further stated in the letter that if Walker did not respond to the letter by February 21, 2023, they would have to separate her employment.[18] Walker received this letter on February 6, 2023, but did not respond.[19]

The record reflects the parties' dispute the exact date of Walker's discharge. Walker claims JPCC fired her on February 22, 2023, one day after JPCC's response deadline and the day she received notice of termination from JPCC.[20] The Louisiana Workforce Commission's Notice of Separation also lists Walker's "Date of Separation" as February 22, 2023,[21] as does JPCC's employee status change report.[22] JPCC, however, claims they fired Walker the following day on February 23, 2023.[23]

JPCC gave multiple reasons for Walker's discharge. The first reason was that Walker "[exhausted] all FMLA [leave]" and she did not respond to the ultimatum letter sent on February 6, 2023.[24] The next day, JPCC listed, in its own employee status change report, that they fired Walker for "[e]xcessive absence/ [tardiness]."[25]

---

[16] [Doc. No. 23-1, p. 6].
[17] [Doc. No. 28, p. 13]; [Doc. No. 23-2, pp. 40, 49].
[18] [Doc. No. 23-2, p. 40].
[19] [Doc. No. 23-1, p. 6]; [Doc. No. 23-2, p. 41].
[20] [Doc. No. 28, p. 14]; [Doc. No. 28-10, pp. 10–11].
[21] [Doc. No. 23-2, p. 58].
[22] [Id. at p. 61].
[23] [Id. at p. 57].
[24] [Id. at p. 58].
[25] [Id. at p. 61].

On November 2, 2023, Walker filed a charge of race discrimination, retaliation, harassment, and other forms of discrimination with the Equal Employment Opportunity Commission ("EEOC").[26] Then, on March 18, 2025, Walker filed suit in this Court, alleging state and federal claims.[27] The EEOC issued Walker a right-to-sue notice in April 2025, about a month after she filed this suit.[28]

The parties briefed all relevant issues, and the matter is ripe.

## II.    Law and Analysis

### A.    Standard of Review

A court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). If the movant meets their initial burden of showing no genuine issue of material fact, "the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (citation modified). A fact is "material" when proof of its existence or nonexistence would affect the lawsuit's outcome under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "the mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. And a dispute about a material fact is "genuine" only if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

---

[26] [Doc. No. 23-4, p. 1].
[27] [Doc. No. 23-1, p. 7].
[28] [Doc. No. 23-5, p. 1].

While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). But summary judgment is appropriate when the evidence is "merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249 (1986) (citation modified).

Moreover, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation modified). Courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).

Finally—and importantly—there can be no genuine dispute as to a material fact when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof of trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## B.    Analysis

Walker's complaint brings multiple claims under different theories. The Court analyzes the claims as follows: first, the Louisiana Employment Discrimination Law-based state law claim; second, the racial discrimination claims based on two theories (failure to promote and termination); third, the hostile work environment claim; and fourth, the retaliation claims under two theories (Title VII and FMLA).

### 1.      Louisiana Employment Discrimination Law

Claims under Louisiana Employment Discrimination Law ("LEDL") are subject to a one-year prescriptive period. La. Stat. Ann. § 23.303(D). As an exception, the statute suspends prescription during the pendency of an administrative review or investigation before the EEOC or the Louisiana Commission on Human Rights, but for no more than six months. *Id.* Thus, a plaintiff has up to eighteen months from the date of the last alleged discriminatory act to file a claim under the LEDL. *O'Neal v. Cargill, Inc.*, 178 F. Supp. 3d 408, 417 (E.D. La. 2016). Walker does not dispute JPCC's request to dismiss her LEDL claim for being untimely.[29] Nevertheless, applying § 23.303(D), the Court finds Walker's LEDL claim is untimely and has therefore prescribed.

Walker claims the last discriminatory act she faced occurred when JPCC discharged her on or about February 22, 2023.[30] But Walker did not file this action until March 18, 2025—almost twenty-five months from the date of discharge and—far beyond the one-year prescriptive period.[31] Even if Walker's EEOC filing suspended the prescriptive period for six months, she still had to file her suit on or before August 22, 2024, to not exceed the eighteen months allotted. She did not. Thus, Walker's LEDL claim has prescribed no matter what.

Walker's claim is not only untimely, but there is also the question of whether this claim was ever properly pled. Walker only references LEDL once in her first

---

[29] [Doc. No. 28, p. 1].
[30] [Id. at p. 14]; [Doc. No. 28-10, pp. 10–11].
[31] [Doc. No. 23.1, p. 7].

amended complaint's jurisdictional statement.[32] Because the claim does not appear in any of Walker's substantive pleadings, the Court finds that this strongly suggests the claim was not properly pled.

Nonetheless, the Court need not decide the pleading issue because the claim is certainly time-barred. JPCC's Motion is therefore **GRANTED** as to Walker's claim of discriminatory discharge under the LEDL.

### 2.    Title VII – Racial Discrimination

Title VII of the Civil Rights Act of 1964 prohibits workplace discrimination based on protected characteristics, including race. 42 U.S.C. § 2000e-2. When a discrimination claim relies on circumstantial evidence, courts may use the *McDonnell Douglas* burden-shifting framework. *Watkins v. Tregre*, 997 F.3d 275, 281 (5th Cir. 2021); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).

Walker argues, and the Court analyzes, her discrimination claim under two theories: (1) Walker claims that she was denied a permanent position within the booking department based on her race,[33] and (2) that she was discriminatorily discharged based on her race.[34]

### a.    Failure to Promote Based on Race

Walker argues that JPCC discriminated against her by denying her a position within the booking department, despite her being more qualified than the woman who received the position.[35] She further asserts that the only difference between the

---

[32] [Doc. No. 23-2, p. 23].
[33] [Id. at pp. 24, 28].
[34] [Id. at p. 24].
[35] [Id.].

less qualified selectee and herself was their skin color.[36] JPCC responds that even assuming that the alleged denial occurred, the claim is untimely.[37] The Court agrees with JPCC that Walker's failure to promote claim fails for two reasons. First, Walker never applied for the booking position, so she suffered no adverse employment action. Second, even if a denial occurred, the claim is untimely.

Walker must satisfy two federal deadlines to bring her claim under Title VII in Louisiana. First, Walker must file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory act. 42 U.S.C § 2000e-5(e)(1); *EEOC v. Council for Advancement of Soc. Servs. & Educ.*, 753 F. Supp. 3d 507, 512 (W.D. La. 2024). Second, Walker must file suit in federal court within 90 days of receiving a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002). A failure to promote is a discrete act, so the 300-day period runs from the date the promotion is denied. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 102–03 (2002).

Here, Walker concedes, in her deposition, that she never applied for the open booking position.[38] Thus, the Court finds that Walker was not denied the booking position because she never applied for it. Even if the denial occurred, however, Walker testified during her deposition that this incident occurred prior to 2020.[39] Walker did not file her EEOC claim until November 2, 2023, three years after the

---

[36] [Id.].
[37] [Doc. No. 23-1, pp. 7–8].
[38] [Doc. No. 23-2, p. 11]; Walker confirms in her deposition that although she spoke to the head of the booking department about the position, she never went through "proper procedure" to apply.
[39] [Id. at pp. 11–12]; When asked by counsel about incident and if it was "[within] the last few years, like '20-'22," Walker responded by clearly stating "[it] was before."

Page **8** of **24**

alleged event.[40] Since she filed her EEOC claim more than 300 days after the incident occurred, it is untimely. Because the claim is time-barred, the Court does not address the merits of her claim under the *McDonnell Douglas* framework.

Walker also argues that the promotion denials are admissible as "background evidence" in support of her hostile work environment claim, but that is misplaced.[41] "The admissibility of past employment practices is an" evidentiary issue that is "better addressed through motions in limine." *See Xu v. Bd. of Trs. of Univ. of Fla.*, 833 F. Supp. 2d 1338, 1345 n.2 (N.D. Fla. 2011), *abrogated on other grounds by Lewis v. City of Union City, Georgia*, 918 F.3d 1213 (11th Cir. 2019). Accordingly, the Court does not address this issue further.

Therefore, JPCC's Motion is **GRANTED** as to Walker's claim of failure to promote based on race.

### b.    Termination Based on Race

Walker claims that JPCC discharged her employment due to her race as a black woman.[42] Walker also claims her white supervisors treated her unfairly and that "white employees were selected for advancement and key assignments over black employees."[43] JPCC argues that Walker cannot establish a *prima facie* case because she offers no competent evidence that race caused her discharge, and that they terminated Walker's employment because she "was unable to do her job after FMLA

---

[40] [Doc. No. 23-1, p. 5]; [Doc. No. 23-4, p. 1].
[41] [Doc. No. 28, p. 22].
[42] [Doc. No. 23-2, p. 24].
[43] [Doc. No. 23-3, p. 10].

leave."[44] The Court agrees with JPCC that has Walker failed to establish a *prima facie* case showing discriminatory discharge based on race.

Walker relies on circumstantial evidence for this claim, so the *McDonnell Douglas* framework governs. *McDonnell Douglas*, 411 U.S. at 802–04. Walker must first establish a *prima facie* case of discrimination. *Turner*, 476 F.3d 337, 345. To do so, Walker must show: (1) she belongs to a protected class; (2) she was qualified for the position at issue; (3) she suffered an adverse employment action; and (4) that she was replaced by someone outside of the protected class, OR was treated less favorably than other similarly situated employees outside the protected group. *Ayorinde v. Team Indus. Servs. Inc.*, 121 F.4th 500, 507 (5th Cir. 2024).

Applying this standard to the facts here, Walker satisfies the first three elements. She belongs to a protected class as a black woman.[45] She shows she is qualified for her position based on her fifteen years of work experience at JPCC, and she suffered an adverse employment action when she was discharged on February 23, 2023.[46] The fourth element is where Walker's claim fails. Because Walker does not claim anyone outside of her protected class took her position as a correctional officer, she must satisfy the second prong of the fourth element by establishing someone who was similarly situated and outside of her protected class was treated more favorably than her when under "nearly identical circumstances." *Id.*; *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d. 253, 260 (5th Cir. 2009). The Fifth Circuit

---

[44] [Doc. No. 23-1, p. 13]; [Doc. No. 29, p. 1].
[45] [Doc. No. 23-2, p. 28].
[46] [Doc. No. 28, p. 6].

holds that employees are "similarly situated" when they: (1) hold the same job or responsibilities, (2) share the same supervisor or have their employment status determined by the same person, and (3) have essentially comparable violation histories. *Id.*; *see West v. City of Houston, Texas*, 960 F.3d 736, 740 (5th Cir. 2020).

On this record, Walker has failed to identify any employee who is similarly situated to her. Walker points to Jordan, her white supervisor, as a comparator, but the Court finds that showing unpersuasive.[47] Walker was a correctional officer and had different jobs or responsibilities from her supervisor, Jordan.[48] Additionally, their conduct is not "nearly identical." *West*, 960 F.3d at 740. JPCC asserts that Walker was discharged because she failed to do her job after exhausting medical leave.[49] If JPCC fired Jordan, it would be due to his failure to supervise, not for his failure to complete the job as a corrections officer. Finally, there is nothing in the record to support that either party had similar violation histories. Because Walker failed to establish a *prima facie* case of discriminatory discharge, the Court need not address the rest of the *McDonnell Douglas* burden-shifting framework.

For these reasons, the Court finds Jordan is not a similarly situated comparator to Walker. Because Walker fails to identify a similarly situated comparator outside of her protected class, she fails to meet her initial burden of establishing a *prima facie* case. Therefore, JPCC's Motion is **GRANTED** as to Walker's claim of race-based discriminatory discharge.

---

[47] [Id. at p. 17].
[48] [Id. at  p. 22].
[49] [Doc. No. 29, p. 1].

### 3.    Title VII – Hostile Work Environment

Walker alleges that she faced a hostile work environment at JPCC when Lowring assaulted her in March 2022, and subsequent retaliatory ostracism by her coworkers after she reported said assault.[50] JPCC argues that Walker's claim is time-barred for two reasons: (1) she lacks competent evidence that her EEOC charge was timely, and (2) the continuing violation doctrine cannot salvage her claim because she fails to identify an act of harassment within the 300-day statutory window.[51] Walker responds that her claim is timely under the continuing violation doctrine.[52]

For Walker's hostile work environment claim to survive summary judgment, she must show (1) she belongs to a protected group; (2) she received unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Wantou v. Wal-Mart Stores Texas, L.L.C.*, 23 F.4th, 422, 433 (5th Cir. 2022) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

The Court need not decide if Walker has come forward with sufficient evidence that the alleged ostracism occurred. Rather, assuming that the alleged ostracism occurred, Walker's claim fails on two independent grounds: (1) Walker's EEOC charge was untimely, and (2) the continuing violations doctrine does not save the claim because the alleged harassment was not severe or pervasive.

---

[50] [Doc. No. 28, pp. 10, 11, 20].
[51] [Doc. No. 23-1, p. 8]; [Doc. No. 29, p. 2].
[52] [Doc. No. 28, p. 19].

Page **12** of **24**

### a.    Walker's EEOC charge was untimely

Before filing a hostile work environment claim, the plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1).

Walker filed her charge of discrimination with the EEOC on November 2, 2023. To be timely, Walker had to file the charge within 300 days of any act that contributed to the hostile work environment. *EEOC v. WC&M Enterprise, Inc.*, 496 F.3d 393, 398 (5th Cir. 2007). Counting back 300 days from the date of filing, only acts on or after January 6, 2023, fall within that period. Walker does not dispute that the March 16, 2022, assault falls outside of this window, as it happened about twenty months prior to Walker filing her EEOC charge.[53] Standing alone, the assault cannot render the charge timely, as it is years outside of the 300-day window. Walker's claim only survives if the continuing violation doctrine applies.

### b.    The continuing violation doctrine does not save Walker's claim because the alleged retaliatory ostracism was not severe or pervasive.

Walker claims she is saved under the continuing violation doctrine because, in addition the assault, she faced she faced retaliatory ostracism from coworkers from "March 2022 through early 2023."[54] JPCC argues that Walker fails to save her claim through the continuing violation doctrine because she has no evidence of an act of harassment taking place within the standard 300-day window.[55] The Court disagrees

---

[53] [Doc. No. 28, p. 20]; [Doc. No. 23-1, p. 5]; [Doc. No. 28, p. 6].
[54] [Doc. No. 28, p. 6]; [Doc. No. 23-3, p. 6].
[55] [Doc. No. 23-1, p. 8].

with Walker that the continuing violation doctrine makes the entire course of conduct actionable, including both the March 2022 incident and the alleged retaliatory ostracism[56]

To save a hostile work environment claim under the continuing violation doctrine, Walker must: 1) file an EEOC charge within 300 days of any action that contributed to the hostile work environment, and (2) if this requirement is met, then the court may consider all acts alleged to have contributed to the hostile environment, even those outside the 300-day period. *WC&M*, 496 F.3d at 398 (citing *Nat'l R.R. Passenger Corp.*, 535 U.S. at 117, 122.) The doctrine does not lower the substantive threshold of a hostile work environment claim. The conduct must still be severe or pervasive enough to alter the conditions of employment and create an abusive work environment. *Wantou*, 23 F.4th at 433. This determination is fact-intensive and considers the totality of the circumstances, including the conduct's frequency, severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with the employee's job performance. *Id.* Isolated incidents, unless extremely serious, are not of the kind of harassment that alters the terms and conditions of employment. *Saketkoo v. Administrators of Tulane Educ. Fund*, 31 F.4th 990, 1003 (5th Cir. 2022).

Here, only the alleged retaliatory ostracism could potentially fall within the 300-day window. Walker contends that her coworkers excluded her and occasionally-made disparaging comments that she was "faking [her injury]" and was "not really

---

[56] [Doc. No. 28, p. 18].

hurt."[57] Even crediting this testimony, such behavior amounts at most to "simple teasing," and "offhand comments," that are "isolated incidents," which do not arise to the level of harassment sufficiently severe or pervasive enough to alter the terms and conditions of employment to create an abusive working environment, unless extremely serious. *Wantou*, 23 F.4th at 433. Accordingly, the Court finds that the continuing violation doctrine does not save the claim because the alleged retaliatory ostracism fails to reach the level of severity or pervasiveness needed to alter the conditions of her employment to create an abusive working environment.[58] *Id.*

The record further shows that much of the alleged retaliatory ostracism occurred while Walker was on her FMLA leave and largely absent from JPCC. Walker began FMLA leave in November 2022, and did not return to JPCC, except for sporadic, brief visits to JPCC's human resources department to drop off doctor's excuses.[59] The type of harassment Walker describes is not severe or pervasive enough to interfere with someone's employment, especially when they are not working in or regularly exposed to the workplace environment.[60] *See Kurth v. Gonzales*, 472 F. Supp. 2d 874, 883 (E.D. Tex. 2007) (recognizing that harassment outside the workplace may be actionable but rejecting hostile work environment theories where plaintiff was on extended leave such that there was "no existing work environment"); *see also Oliver v. Roehm Am., LLC*, No. 21-CV-1831, 2022 WL 11763644, at *15 (E.D. La. Oct. 20, 2022) (dismissing a hostile work environment claim at the pleading stage

---

[57] [Id.].
[58] [Doc. No. 28, p. 11]; [Doc. No. 23-4, p. 1].
[59] [Doc. No. 28, p. 11]; [Doc. No. 23-3, p. 6].
[60] [Doc. No. 25-8, p. 1].

where alleged conduct could not have interfered with work performance because plaintiff was on FMLA leave).

Therefore, the Court finds Walker's hostile work environment claim unavailing. It is not only untimely but the alleged acts are also not severe or pervasive. Walker has not provided sufficient evidence to meet her burden of making a *prima facie* case. Accordingly, JPCC's Motion is **GRANTED** as to Walker's claim of a hostile work environment.

### 4.    Retaliation

Retaliation claims under both Title VII and the FMLA are analyzed using the *McDonnell Douglas* burden-shifting framework when a plaintiff's claims are based on circumstantial evidence. *Wheat v. Florida. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016); *see McDonnell Douglas*, 411 U.S. at 802–04.

*McDonnell Douglas* provides a three-step framework used for analyzing retaliation claims. First, Walker must establish a *prima facie* case of unlawful retaliation. *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020). The requirements of a *prima facie* case vary depending on the type of claim that is being brought. *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). If Walker establishes a *prima facie* case, the burden shifts to the JPCC to rebut the presumption by giving a "legitimate, nondiscriminatory reason for its decision." *Brown*, 969 F.3d at 577. Finally, if JPCC makes this showing, the burden shifts again to Walker to prove that the proffered reason was merely a pretext for discrimination. *Id.*

Walker advances two retaliation theories: (1) retaliatory discharge under Title VII for engaging in protected activity by reporting assault by her supervisor; and (2) retaliatory discharge under the FMLA based on protected activity by taking leave under the FMLA.[61] The Court analyzes each in turn.

### a.    Title VII Retaliation

Title VII "prohibits an employer from discriminating against an employee because that individual made a charge, testified, assisted or participated in a Title VII proceeding or investigation." 42 U.S.C. § 2000e-3(a); *Ladner v. Walmart*, 834 F. App'x. 893, 895–96 (5th Cir. 2020). Because Walker relies on circumstantial evidence, the *McDonnell Douglas* burden-shifting framework governs. *Ladner*, 834 F. App'x. at 896.

To establish a *prima facie* case, Walker must show: (1) she engaged in a protected activity; (2) she suffered a materially adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Wright v. Union Pacific R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021). Walker contends that she faced "unlawful retaliation" for reporting discriminatory conduct she faced during work hours.[62] JPCC argues that Walker cannot meet her *prima facie* case, as she cannot establish a causal link because she cannot show close temporal proximity between the adverse action and protected activity.[63] Thus, there is no dispute from either party that Walker engaged in a protected activity or suffered an adverse action.

---

[61] [Doc. No. 23-2, pp. 29, 30].
[62] [Id. at p. 29].
[63] [Doc. No. 23-1, p. 14].

Rather, the claim turns on the third element, whether there is a sufficient causal link between the report of the assault and the discharge.[64]

Here, Walker was discharged from JPCC on or around February 22, 2023, approximately eleven months after reporting the March 2022 assault to her supervisors.[65] JPCC claims that this gap of eleven months is "too long to sustain a *prima facie* claim of causation based solely on temporal proximity."[66] JPCC cites *Ganheart v. Brown*, to argue that a five month interval between the protected activity and adverse employment action is too long of a period to show a causal link solely on temporal proximity. *See* 740 F. App'x. 386, 390–91 (5th Cir. 2018). At the *prima facie* stage, temporal proximity can support an inference of causation, but only when the timing between the protected activity and adverse employment action is "very close" and connected to the "decisionmaker's knowledge of the protected activity." *Clark County. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam); *Thompson v. Somervell Cnty., Tex.*, 431 Fed. App'x. 338, 342 (5th Cir. 2011).

The Court finds that even assuming JPCC knew that Walker reported the assault, the eleven-month lapse is far outside the "very close" temporal proximity required to establish a causal link on its own. *See Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020) (holding a five-month gap is insufficient to establish a causal link based on timing alone); *Ganheart*, 740 Fed. App'x. at 391 (same); *Brown v. AT&T Servs. Inc.*, 236 F. Supp. 3d 1000, 1008 (S.D. Tex. 2017) (finding a seven-

---

[64] [Id. at p. 13].
[65] [Doc. No. 28, p. 7].
[66] [Doc. No. 23-1, p. 14].

month gap is insufficient to show a causal link based on timing alone). Since the Fifth Circuit repeatedly finds gaps of five to seven months too remote to support causation, Walker's eleven-month gap cannot, by itself, establish the required causal link.

In such cases, the Fifth Circuit requires the plaintiff point to other evidence of a causal link to consider in addition to temporal proximity, such as employment records that do not support dismissal, or an employer's departure from typical policies and procedures. *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454–55 (5th Cir. 2013). Walker fails to make this showing as she did not point any additional evidence for the Court to consider. While Walker makes this argument to support her FMLA retaliation claim, she does not make such an argument (or any argument) for her Title VII retaliation claim.[67]

The Court notes that Walker failed to effectively argue this claim due to poor briefing, as her first amended complaint only mentioned Title VII once in the jurisdictional statement. The Court reached the above conclusion after scouring through the record. Nonetheless, the Court agrees with JPCC that Walker failed to establish a *prima facie* case of Title VII retaliation, so the remaining steps of *McDonnell Douglas* burden-shifting framework are not applicable and do not need to be addressed further. Accordingly, JPCC's Motion is **GRANTED** as to Walker's claim of Title VII retaliation.

---

[67] [Doc. No. 28, p. 25].

### b.    FMLA

The FMLA prohibits employers from retaliating against employees who exercise their FMLA rights. *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 527 (5th Cir. 2021) (citing *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 580 (5th Cir. 2006). Because Walker relies on circumstantial evidence, the *McDonnell Douglas* burden-shifting framework governs. *Campos*, 10 F.4th at 527.

To establish a *prima facie* case of FMLA retaliation, Walker must show: (1) she was engaged in a protected activity under the FMLA; (2) she suffered an adverse employment action; and (3) she was treated less favorably than an employee who had not requested leave under the FMLA OR the adverse decision was made because she sought protection under the FMLA. *Id.* If Walker makes this showing, the burden shifts to JPCC to offer a "legitimate, non-discriminatory reason for the adverse employment action." *Houston v. Texas Dep't of Agric.*, 17 F.4th 576, 582 (5th Cir. 2021). If JPCC gives such reasons, the burden shifts back to Walker to prove by a preponderance of the evidence that JPCC's stated reason is pretext for retaliation. *Id.*

Walker contends that JPCC discharged her for "[failing] to return to work," even though her medical team had not authorized her to do so.[68] JPCC responds that Walker cannot establish a *prima facie* case, nor can she establish that the reason for discharge was pretext for retaliation.[69] The Court disagrees.

---

[68] [Doc. No. 23-2, p. 30].
[69] [Doc. No. 23-1, p. 14].

Page **20** of **24**

The Court finds that Walker can establish a *prima facie* case of FMLA retaliation. Walker satisfies the first two elements of her *prima facie* case: she engaged in protective activity under the FMLA (taking leave due to her shoulder injury) and suffered an adverse employment action when JPCC discharged her on or around February 22, 2023.[70] The dispute centers on the second prong of the third element. Because the record contains no evidence of similarly situated employees who requested FMLA leave, the Court considers whether the discharge occurred *because* Walker sought protection under the FMLA. *Campos*, 10 F.4th at 527.

Causation may be inferred from temporal proximity between the protected activity and the adverse action, but only when the timing is "very close" and the relevant decisionmaker knew of the protected activity. *Breeden*, 532 U.S. at 273; *Thompson*, 431 Fed. App'x. at 342. Here, the timing of Walker's discharge in relation to her FMLA leave, together with JPCC's knowledge of the FMLA leave, supports an inference of causation at the *prima facie* stage.

The record reflects that Walker began FMLA leave on November 16, 2022,[71] and JPCC fired her on February 22, 2023.[72] Although the FMLA generally provides eligible employees up to twelve workweeks of leave, *Mauder*, 446 F.3d at 579, Walker's physician certified her leave until or around January 31, 2023, regardless of when she started.[73] Walker's termination occurred approximately one month after

---

[70] [Doc. No. 23-2, p. 33]; [Doc. No. 28, p. 14]; [Doc. No. 28-10, pp. 10–11].
[71] Although Walker claims she start FMLA on November 3, 2022, the record unequivocally shows she started FMLA leave on November 16, 2022. [Doc. No. 28, p. 6]; [Doc. No. 23-2, pp. 33, 36].
[72] [Doc. No. 28, p. 4]; [Doc. No. 28-10, pp. 10–11].
[73] [Doc. No. 23-2, pp. 34, 36].

her certified FMLA leave ended. This very close temporal proximity is sufficient to establish a *prima facie* case under *Campos*, where the Fifth Circuit held an adverse action occurring about one month after FMLA leave expired was sufficiently close in time to create a causal link. *Campos*, 10 F.4th at 528. The burden therefore shifts to JPCC to articulate a legitimate, nonretaliatory reason for the discharge. *Id.*

Even assuming JPCC meets that burden, the Court finds evidence creating a genuine issue of material fact as to pretext. The Fifth Circuit recognizes that an employer's shifting or post hoc explanations for discharge can support an inference of pretext. *See Campos*, 10 F.4th at 530 (holding an employer's shifting reasons for termination created an inference for pretext"); *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 238 (5th Cir. 2015) (holding employers' explanations for discharge postdating the decision are "potentially manufactured").

Here, the record shows that JPCC gave various reasons for Walker's discharge. First, Walker's Termination Information sheet, dated February 23, 2023, lists "[e]xcessive absence/[tardiness]."[74] Second, JPCC's Separation Notice to the Louisiana Workforce Commission states that Walker "exhausted all FMLA" and did not respond to JPCC's February 6, 2023, letter, which they sent by certified mail and which Walker received on February 7, 2023.[75] Third, JPCC's reply brief asserts Walker was discharged because she "remained unable to do her job after exhausting FMLA leave,"[76] a reason that does not appear outside this Motion. These shifting

---

[74] [Id. at p. 62].
[75] [Id. at p. 58].
[76] [Doc. No. 29, p. 1].

reasons for Walker's discharge create a genuine dispute of fact over JPCC's true rationale for firing Walker.

While JPCC may argue that its stated reasons are merely variations on the same theme, the Court cannot weigh that characterization. *Campos*, 10 F.4th at 530. The record reflects multiple, differing explanations for Walker's termination, and under *Campos*, such inconsistencies create "ample fact questions for consideration." *Id*. Accordingly, the record shows a genuine dispute of material fact on pretext.

Therefore, the Court finds Walker has established a *prima facie* case of FMLA retaliation. Although JPCC offers seemingly legitimate, nonretaliatory reasons for firing Walker, their reasons are shifting and are post hoc explanations that suggests pretext. As such, JPCC's Motion is **DENIED** as to Walker's FMLA retaliation claim.

### III. Conclusion

For the above-stated reasons,

**IT IS ORDERED**, **ADJUDGED**, **AND DECREED** that JPCC's Motion for Summary Judgment [Doc. No. 23] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED**, **ADJUDGED**, **AND DECREED** that JPCC's Motion is **GRANTED** as to Walker's claim under the Louisiana Employment Discrimination Law, and this claim is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED**, **ADJUDGED**, **AND DECREED** that JPCC's Motion is **GRANTED** as to Walker's Title VII-based race discrimination, hostile work environment, and retaliation claims, and these claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that JPCC's Motion is **DENIED** as to Walker's claim for retaliation under the FMLA.

MONROE, LOUISIANA, this 6th day of July 2026

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE